UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 5:13-cv-287-DCR-EBA

MICHAEL JOSEPH FLICK,                                                          PETITIONER,

V.                          **MAGISTRATE JUDGE'S**
                              **REPORT AND RECOMMENDATION**

WARDEN JOSEPH MEKO,                                          RESPONDENT.

\* \* \* \* \* \* \*

## INTRODUCTION

In 2008, a Fayette Circuit jury convicted Petitioner Michael Joseph Flick of the murder of Christina Wittich, second degree assault while under extreme emotional disturbance (EED) for the shooting of Randall Lambirth, which occurred shortly after Flick shot Wittich, and for first degree burglary. See [Rs. 11, 24]; Flick v. Meko, No. 5:13-287-DCR-EBA, 2014 WL 1908821, at *6 (E.D. Ky. May 13, 2014). The jury recommended life imprisonment for the murder conviction, five (5) years for the assault conviction, and ten (10) years for the burglary conviction, and the trial court sentenced Flick accordingly. Flick v. Com., No. 2008-SC-000233-MR, 2009 WL 1451923, at *1 (Ky. May 21, 2009).

After exhausting his state appellate remedies, Flick filed a 28 U.S.C. § 2254 petition raising various claims for relief, including a claim that the trial court should have granted Flick's motion for directed verdict on the murder conviction. [R. 1]. Flick argued that, because the jury's finding that he murdered Wittich was inconsistent with its finding that he was acting under extreme emotional distress (EED) when he shot Lambirth, the jury had entered an inconsistent verdict, and the trial court had improperly denied Defendant's motion for directed verdict. [R. 1

at 8].

Adopting the undersigned's Report and Recommendation, the District Court denied this claim, and all other claims in Flick's § 2254 petition. [Rs. 10, 11]. However, the Sixth Circuit Court of Appeals reasoned that, because Flick had argued that the EED evidence he submitted at trial was uncontradicted, additional trial transcripts were needed to properly address the directed verdict claim. The Sixth Circuit partially vacated the District Court's judgment, and remanded the case for further analysis only as to the directed verdict claim. [R. 24 at 6–7]. At the Sixth Circuit's direction, the District Court ordered additional briefing on the issue of whether the state's denial of the directed verdict motion was erroneous, and ordered the parties to supplement the record with additional evidence relevant to that issue. [R. 26]. The parties have supplemented the record and filed their respective briefs, [Rs. 30–31, 34–35], and the matter is now ripe for the Court's consideration.

Having reviewed the record, the undersigned finds that the Kentucky Supreme Court's sufficiency determination was not objectively unreasonable. 28 U.S.C. § 2254(d)(2). The undersigned recommends that the directed verdict claim be denied, and that Defendant's § 2254 petition be dismissed with prejudice in its entirety and stricken from the docket.

## **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The facts as summarized by the Kentucky Supreme Court in the unpublished opinion of Michael Joseph Flick v. Commonwealth of Kentucky, 2008-SC-233-MR, 2009 WL 1451923 (Ky. May 21, 2009), are undisputed, and therefore entitled to a presumption of correctness. Benge v. Johnson, 474 F.3d 236, 241 (6th Cir. 2007). The facts are summarized as follows:

> In 2003, Randall Lambirth contacted [Flick] about purchasing [Flick's] optometry practice in Lexington. [Flick] decided that he would sell his practice, and the two

men reached an agreement. The arrangement contained a three (3) year employment contract for [Flick], which, upon its end, would complete the sale. The employment contract called for [Flick] to work four (4) days a week, Wednesday through Saturday, for Lambirth.

In early 2004, the relationship between Lambirth and [Flick] began to deteriorate. [Flick] did not agree with how Lambirth was running the practice and regularly argued with him. Christina Wittich, Lambirth's girlfriend and [Flick's] coworker, confronted [Flick] in the parking lot one afternoon, as he tried to leave for lunch with a lobby full of patients. By the summer of 2004, [Flick] said he was "burned out" with work.

During this time, [Flick] asked Lambirth if he could have Saturdays off because his father was ill; Lambirth acquiesced to his request. However, shortly after letting [Flick] take off Saturdays, Lambirth discovered that [Flick] was actually working at an optical center in a local Wal-Mart on those days. Lambirth confronted [Flick] and told him he had to come back to work for him on Saturdays or he would be fired. [Flick] refused to come back. On November 17, 2004 Lambirth fired [Flick]. By the end of March 2005, [Flick] had filed a wrongful termination and breach of contract lawsuit against Lambirth. The two men would not see each other again until May 20, 2005.

On May 20, 2005, [Flick] drove to Lambirth's house. Before exiting his vehicle, he grabbed a gun, which he had stolen from a friend. Upon entering the house, [Flick] shot and killed Christina Wittich. Shortly thereafter, Lambirth returned home accompanied by his brother. He went into the house and discovered Christina lying in a pool of blood. At this point [Flick] approached him with a gun. Lambirth tried to get away, but [Flick] shot him in the arm. A struggle ensued between the two men, at which time Lambirth's brother, Chris, entered the house and assisted Lambirth. During the altercation, Lambirth was able to call the police.

Lambirth and Christina were taken to the University of Kentucky medical center where Christina was pronounced dead; Lambirth was treated for his wounds. [Flick] was also transported to the medical center for treatment of his non-life threatening injuries.

At trial, [Flick] based his defense upon the presence of Extreme Emotional Disturbance (EED). Each side presented its evidence either for or against the existence of EED. At the conclusion of the Commonwealth's case, [Flick] made a motion for direct verdict arguing that a reasonable jury could not find the absence of EED. The trial court overruled the motion. Ultimately, [Flick] was convicted of murder, second degree assault under EED and first degree burglary. He was sentenced to life imprisonment for the murder conviction, five (5) years

for the assault conviction, and ten (10) years for the burglary conviction.

Flick v. Com., No. 2008-SC-000233-MR, 2009 WL 1451923, at *1–*2; [R. 1-2 at 1–6].

After exhausting his state court remedies, Flick filed a 28 U.S.C. § 2254 petition for collateral relief, asserting various grounds for relief. [R. 1]. All his claims were adjudicated on their merits and denied by Kentucky's highest courts, and this Court determined that the state's resolution of those claims did not involve an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). The undersigned recommended that Flick's § 2254 claims be denied, [R. 10], and the District Court adopted this recommendation. [R. 11].

In recommending that Flick's directed verdict claim be denied, the undersigned cited to the Kentucky Supreme Court's opinion which affirmed the denial of Flick's original directed verdict motion. In that opinion, the Kentucky Supreme Court outlined the applicable standard of review, and explained why the jury's conclusions and verdict were justified:

> [Flick] was convicted of the murder of Christina Wittich and second degree assault under EED for shooting Randall Lambirth. Evidence was presented indicating that [Flick] suffered from mental illness and had become disturbed with his obsession over the lawsuit he had filed against Lambirth. However, there was also conflicting evidence presented regarding [Flick's] mental state tending to negate the presence of EED.
>
> This Court no longer requires that verdicts be consistent, merely that the evidence to support such verdicts be sufficient. Commonwealth v. Harrell, 3 S.W.3d 349 (Ky. 1999). In Harrell we found, "[a] rigid adherence to a prohibition against inconsistent verdicts may interfere with the proper function of a jury … the better approach would be to examine the sufficiency of the evidence to support each verdict." Id. at 351. "The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be … to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318 (1979). "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original); see also Woodby v. Immigration and Naturalization Service, 385 U.S. 276, 282

4

(1966).

Pursuant to Kentucky law, the inconsistent verdicts argument is without merit; therefore, we review this claim under a sufficiency of the evidence standard. [Flick] argues that because the jury found him guilty of second degree assault under EED, they could not have found him guilty of murder. This claim lacks factual and legal support.

…

In reviewing insufficiency claims, this Court must ask whether it would be "clearly unreasonable" for a jury to find guilty under the evidence presented. Commonwealth v. Shuttles, 80 S.W.3d 424, 426 (2002). It is well-settled that the testimony of a single witness is sufficient to support a finding of guilt, even when other witnesses testified to the contrary. Id. "[T]he court- as does a jury in an ordinary case- ha[s] the right to believe the testimony adduced by one litigant in preference to that furnished by his antagonist, even though a greater number of witnesses testified in support of the rejected contention." King v. McMillian, 293 Ky. 399, 169 S.W.2d 10, 14 (1943).

The issue thus becomes whether the jury could have reasonably believed that while there was no EED when [Flick] shot and killed Wittich, that event and the ones ensuing triggered EED, which was present when [Flick] shot Lambirth. In fact, the jury was justified in their determinations. Each side presented evidence as to the EED issue. It was up to the jury to weigh the credibility of the witnesses. The verdict must be upheld unless it was clearly unreasonable for a jury to find guilt. Jackson, 443 U.S. at 318. To examine this, we turn to the record.

Evidence was presented by [Flick] that he was extremely disturbed about the lawsuit against Lambirth. The Commonwealth presented evidence that, on the day of the crimes, [Flick] was in a good mood and did not seem disturbed to the people he interacted with on that day. To find EED,

> There must be evidence that the defendant suffered "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from [an] impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." McClellan v. Commonwealth, 715 S.W.2d 464, 468–69 (Ky. 1986). "[T]he event which triggers the explosion of violence on the part of the criminal defendant must be sudden and uninterrupted. It is not a mental disease or illness … Thus, it is wholly insufficient for the accused defendant to claim the defense of extreme emotional disturbance based on a gradual victimization from his or her environment, unless the

5

> additional proof of a triggering event is sufficiently shown." Foster v. Commonwealth, 827 S.W.2d 670, 678 (Ky. 1991) (citations omitted). And the "extreme emotional disturbance … [must have a] reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." Spears, 30 S.W.3d at 155.

Greene v. Commonwealth, 197 S.W.3d 76, 81– 82 (Ky. 2006). "It is not the court but a jury that must make a factual determination … of extreme emotional disturbance." McClellan, 715 S.W.2d at 467. The triggering event for EED may fester in the mind before surfacing, but there is a question of whether there intervened between provocation and the crime a cooling-off period sufficient to preclude a conclusion that the provocation was adequate. See Springer v. Commonwealth, 998 S.W.2d 439, 452 (Ky. 1999); Fields v. Commonwealth, 44 S.W.3d 355, 359 (Ky. 2001).

It is undisputed that [Flick] went to Lambirth's house on the day in question and killed Christina Wittich. [Flick] did not argue that he did not do it; he merely argued that he did it under the duress of EED. Therefore, there was sufficient evidence to support a conviction of murder, if the jury believed that [Flick] was not acting under EED at the time of the first shooting.

In the present case, the jury was justified in coming to the conclusions they made. Two possible theories exist that would validate the jury's findings. First, the evidence presented swayed the jury to believe that [Flick] was acting in his right mind at the time he shot and killed Christina Wittich, and that event caused EED during the second offense. Or, his EED could have only been triggered by Lambirth because of their tumultuous past and therefore he was in his right mind when he killed Christina and not when he eventually saw Lambirth.

[R. 10 at 8–11], citing Flick v. Com., No. 2008-SC-000233-MR, 2009 WL 1451923, at *5–*7; [R. 1-2 at 12–16].

Concluding that the Kentucky Supreme Court's analysis was not an unreasonable application of federal principles, the undersigned recommended that the directed verdict claim be denied. The District Court, finding that "the evidence presented at trial supported the verdicts returned by the jury regarding the murder and second degree assault convictions," [R. 10 at 8–12], agreed and adopted the recommendation.

6

Yet, as referenced above, the U.S. Court of Appeals for the Sixth Circuit vacated the District Court's Order in part, and remanded the case for further proceedings on the directed verdict claim, finding additional evidence was needed to properly evaluate the claim:

> It is impossible to evaluate Flick's argument at this juncture, because the recording of the trial proceeding is not in the record. While the Kentucky Supreme Court's factual findings are entitled to a presumption of correctness, a petitioner may rebut this presumption by presenting clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Flick appears to argue that such evidence was presented at trial. Rule 5 of the Rules Governing § 2254 Cases places the burden on the Commonwealth to provide relevant transcripts and authorizes district courts to order the Commonwealth to provide additional transcripts if necessary. *Griffin v. Rogers*, 308 F.3d 647, 653–54 (6th Cir. 2002); *see* Rules Governing § 2254 Cases, Rule 5(c). Accordingly, the district court's judgment is vacated to the extent that it denied habeas relief on this claim and the case is remanded to the district court for further analysis following review of the evidence that was presented at trial.

[R. 24 at 6–8].

In accordance with the Sixth Circuit's decision, this Court ordered the parties to further address the claim that the trial court should have entered a directed verdict on the murder charge, and ordered them to supplement the record with any pertinent evidence as to that issue. Where the parties have submitted additional briefs on the issue, [Rs. 30, 34, 35], and a DVD of the trial proceedings has been filed into the record, [R. 31], the matter is fully briefed and ripe for consideration.

## STANDARD OF REVIEW

Petitioner filed his § 2254 petition on September 4, 2013. [R. 1]. Thus, the petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, Tit. I, § 101 (1996) (effective April 1996). See Lindh v. Murphy, 521 U.S. 320, 336 (1997). The AEDPA (amended 28 U.S.C. § 2254(d)) directs that an

application for a writ of habeas corpus shall not be granted with respect to any claim "unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. The U.S. Supreme Court has held that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000).

The AEDPA imposes a "highly deferential standard for evaluating state-court rulings," Lindh, 521 U.S. at 333, n.7, effectively demanding that "state-court decisions be given the benefit of the doubt." Woodford v. Viscotti, 537 U.S. 19, 24 (2002). It is not the reviewing court's role "to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 68 (1991). Rather, the role is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. All factual findings made by state courts are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Post v. Bradshaw, 621 F.3d 406, 413 (6th Cir. 2010).

In considering a challenge to a state court criminal conviction alleging insufficient evidence, a federal habeas court applies two levels of deference to the state court's decision. Brown v. Konteh, 567 F.3d 191, 205 (6th Cir. 2009). First, as in all sufficiency-of-the-evidence challenges, the court determines whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). In doing so, the court does not reweigh evidence, re-evaluate witness credibility, or substitute its judgment for that of the jury. United States v. Hilliard, 11 F.3d 618, 620 (6th Cir. 1993). The court must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution, even if the court itself would have chosen a different result. Second, even if the court concludes that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review the court must still defer to the state appellate court's sufficiency determination so long as it was not unreasonable. See 28 U.S.C. § 2254(d)(2); Konteh, 567 F.3d at 205.

Therefore, defendants who assert sufficiency of evidence claims face a high bar in federal habeas proceedings, where they are subject to two layers of judicial deference. In short, on § 2254 habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court," and "may do so only if the state court decision was 'objectively unreasonable." Coleman v. Johnson, 132 S.Ct. 2060, 2062 (2012) (*per curiam*).

## ANALYSIS

Flick was convicted of shooting and murdering Wittich, and of second degree assault while under EED in his subsequent shooting of Lambirth. Because each count in an indictment is to be treated as a separate indictment, a verdict need not be consistent. See Dunn v. United States, 284 U.S. 390, 393 (1932). So long as there is sufficient evidence to support convictions for multiple crimes that involved different culpable mental states, the convictions (and verdict) should be sustained, even where the convictions are inconsistent with one another. Com. v.

9

Harrell, 3 S.W.3d 349 (Ky. 1999).

Flick's § 2254 directed verdict claim turns upon the sufficiency of the EED evidence. This Court must determine whether the evidence was sufficient to allow any a rational trier of fact to find Flick guilty of Wittich's murder. In addition to the deference this Court must afford the jury's findings as to the weight of the EED evidence, there is also a second level of deference; because the Kentucky Supreme Court previously affirmed the jury's verdict, see Flick v. Com., No. 2008-SC-000233-MR, 2009 WL 1451923 (Ky. May 21, 2009), this Court should only overturn that finding if the state's decision was "objectively unreasonable." Coleman v. Johnson, 132 S.Ct. 2060, 2062 (2012) (*per curiam*).

The undersigned concludes that the Kentucky Supreme Court committed no objectively unreasonable error, having found that a rational trier of fact could have reasonably determined Flick was not acting under EED when he killed Wittich, based upon the evidence presented. To find EED, the jury would have had to determine that Wittich's death resulted from Flick's "temporary state of mind so enraged, inflamed, or disturbed as to overcome [his] judgment," causing him to "act uncontrollably from [an] impelling force of the extreme emotional disturbance," McClellan, 715 S.W.2d at 468–69, or some "sudden and uninterrupted" triggering event. Foster, 827 S.W.2d at 678. Inversely, jurors could have determined that the evidence showed that Flick's shooting Wittich was *not* caused by an uncontrollable, impelling force or sudden, uninterrupted triggering event.

Given the facts and evidence, there was sufficient evidence that the requisite "triggering event" was absent. The undisputed facts indicate that the shootings of Christina Wittich and Randall Lambirth were not simultaneous, but occurred at least minutes apart (Wittich's shooting

10

occurring first), suggesting that EED could have been a factor for the second shooting and yet not a factor for the first. Also, witness testimony indicates that Flick's anger was predominantly directed at Lambirth, rather than Wittich, due to their personal history and Lambirth's terminating Flick's employment, further distancing and distinguishing the potential motives underlying the shootings. [R. 40, Day 5, 1/14/08; 9:53:25–10:16:50]. There was also evidence that, when personally confronted by Lambirth and told he was being fired on November 17, 2004 (months before the shootings), Flick told Lambirth he would be sorry, and that he would take Lambirth for all he was worth. [Id. at 9:54:01]. Given this evidence, a rational trier of fact could have concluded that, after being terminated, Flick's anger gradually grew and festered, that he had more than ample time to plan some vengeful act, and that Wittich's shooting was not the product of some sudden, uninterrupted event.

A rational factfinder may have very well believed no such triggering event ever occurred, particularly where prosecution presented evidence to further negate Flick's claim that he was suffering from extreme emotional distress prior to or contemporaneous to Wittich's shooting. For example, the jury considered evidence that Flick was calm and happy in the days and hours prior to shootings, and heard testimony from Flick's friends that his behavior had been normal in the preceding weeks. [R. 40, Day 6, 1/15/08; 1:15:00–1:38:49]. There was testimony that, on the day of the shooting, Flick was smiling, "cutting up" and telling jokes at work, ate an ice cream with co-workers, and generally seemed to be relaxed and in good spirits. [Id. at 3:22:45–3:23:45]. Meanwhile, testimony from one of Flick's own experts, Dr. Granacher, established that Flick was a "meticulous planner" who rarely made spontaneous decisions, [R. 40, Day 8, 1/17/08; 10:44:10], and at one point during his testimony, even explicitly stated that there was no

11

triggering event serving as the catalyst for Flick's shooting Wittich. [Id. at 11:19:00].

Notably, Respondent cites to Parker v. Matthews, 132 S. Ct. 2148 (2012) in support of the position that Flick's directed verdict motion was properly denied. In Parker, the defendant filed a § 2254 petition, arguing that the Kentucky Supreme Court had erred by rejecting his claim that there was insufficient evidence to disprove his claim of extreme emotional distress when he shot and killed the victim. The District Court dismissed his § 2254 petition, but a divided Sixth Circuit panel reversed with instructions to grant relief. Id. Finding that the Sixth Circuit had erred by consulting its own precedents rather than those of the U.S. Supreme Court in determining what constituted "clearly established Federal law" within the meaning of the AEDPA, the Sixth Circuit's decision was reversed. Id. The U.S. Supreme Court in Parker emphasized that "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial," Cavazos v. Smith, 132 S.Ct. 2, 4 (2011) (*per curiam*). The Supreme Court stressed that, under the applicable standard, the evidence to support a conviction must be upheld whenever, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id., citing Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).

In accord with these principles, the record establishes that a rational trier of fact could have weighed the evidence as it pertained to EED at the time of Wittich's murder, and determined that no EED was present. As the Kentucky Supreme Court reasonably determined, the evidence was sufficient to show the absence of EED, and so long as any evidence existed to justify the jury's determination, this Court will not replace the jury's determinations with that of

its own at this juncture.

Having reviewed the pertinent evidence admitted at trial, this Court finds that the evidence was more than sufficient to allow any rational trier of fact to find that Wittich's murder was not due to Flick's extreme emotional disturbance. There was an abundance of evidence suggesting that Petitioner was a meticulous planner, had multiple months to brood over his soured relationship with Lambirth, and was never triggered by any specific event at the time of the shootings. Given that his own expert testified against the presence of a triggering event, jurors had reason to suspect that Flick's EED defense was unavailable to him. Though he claimed otherwise, Flick's EED evidence was anything but uncontradicted. In light of the doubly deferential standard, and the evidence presented at his trial, the undersigned finds that Flick is not entitled to relief for his § 2254 directed verdict claim, and his petition should be dismissed in its entirety.

## RECOMMENDATION

For the reasons stated herein, IT IS RECOMMENDED THAT Michael Joseph Flick's 28 U.S.C. § 2254 claim, [R. 1], asserting he was entitled to a directed verdict due to evidence he presented regarding his extreme emotional disturbance when he shot and killed Christina Wittich, be DENIED, and that his § 2254 petition be DENIED IN FULL and STRICKEN from the Court's docket.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749–50 (E.D. Ky. 2002). General objections or objections that require a

judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

    Signed May 3, 2017.

Signed By:
Edward B. Atkins  *EBA*
United States Magistrate Judge