UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MICHAEL JOSEPH FLICK, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 5: 13-287-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JOSEPH P. MEKO, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Petitioner Michael Joseph Flick was convicted in 2008 in the Fayette Circuit Court of murder, second-degree assault under extreme emotion disturbance ("EED"), and first-degree burglary. The Kentucky Supreme Court affirmed the conviction, finding that the evidence was sufficient to support it. *Flick v. Commonwealth*, No. 2008-SC-233, 2009 WL 1451923, \*5–\*7 (Ky. May 21, 2009). Flick filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, after exhausting his remedies in state court. The petition was denied in May 2014. [Record Nos. 11, 12] Flick then appealed to the United States Court of Appeals for the Sixth Circuit. The matter was reversed and remanded for the limited purpose of considering the trial court's failure to enter a directed verdict with respect to the murder count in light of Flick's argument that he was suffering from EED. *Flick v. Meko*, No. 14-5760 (6th Cir. Oct. 20, 2015).

The matter was referred to a United States Magistrate Judge for review and issuance of a report pursuant to § 636(b)(1)(B) consistent with local practice. After further briefing by the

parties, United States Magistrate Judge Edward B. Atkins recommended that Flick's § 2254 motion be denied. [Record No. 41]

The Court makes a *de novo* determination of those portions of a magistrate judge's recommended disposition to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## I. Background

Flick was an optometrist practicing in Lexington, Kentucky in 2003 when Randall Lambirth contacted Flick about purchasing his practice. [Record No. 40, Day 5, 1/14/08, 9:19] The two worked out an agreement which included a three-year employment contract for Flick. Lambirth also hired his girlfriend, Christina Wittich, to work in the practice.

Colleagues testified that Flick did not adjust well to relinquishing control over the practice and becoming Lambirth's employee. [Record No. 40. Day 7, 1/16/08. 9:43] Although Flick was scheduled to work on weekends, he asked for Saturdays off because his father was ill. Lambirth granted this request but found out later that Flick was actually working in another optical center on Saturdays. Flick refused to change his behavior after being confronted, so Lambirth fired him in November 2004. An angry Flick told Lambirth that he would take him for all he was worth and that Lambirth would be sorry. [Record No. 40. Day 5, 1/14/08, 9:54] Lambirth learned at the end of March 2005 that Flick had filed a lawsuit alleging wrongful termination and breach of contract. [*Id.* at 9:58]

Lambirth and Wittich would not see Flick again until May 20, 2005. That day, Flick drove to Lambirth's residence and shot Wittich, who was there alone. Lambirth returned home

shortly after the shooting and discovered Wittich lying unresponsive in a pool of blood. Lambirth then turned to see Flick pointing a gun at him. Flick shot him in the arm as Lambirth dove under a table in an attempt to shield himself. At that point, Lambirth's brother entered the house and grabbed Flick. Lambirth and his brother were able to subdue Flick until help arrived. Lambirth and Wittich subsequently were taken to the hospital where Wittich was pronounced dead.

Flick based his defense during trial on the presence of EED. Ultimately, the jury determined that Flick had been under EED when he assaulted Lambirth, but that he had intentionally murdered Wittich. Flick contends that the trial court should have granted a directed verdict in his favor on the murder charge because all evidence demonstrated that he was under extreme emotional distress when he killed Wittich.

## II. Standard of Review

The Court reviews the sufficiency of the evidence under the highly deferential standards set by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A habeas petition shall not be granted unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A conviction is not supported by substantial evidence if a rational trier of fact could not have found the essential elements of the crime satisfied beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Court's task is to determine whether it was objectively unreasonable for the Kentucky Supreme Court to conclude that a rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found the essential elements of murder beyond a

reasonable doubt. Having reviewed the relevant trial evidence, the Court concludes that the state court's determination was not objectively unreasonable.

## III. Discussion

Intentional murder requires "an intent to cause the death of another person." *Elliott v. Commonwealth*, 976 S.W.2d 416, 418 (Ky. 1998) (quoting K.R.S. § 507.020(1)(a)). Extreme emotional disturbance is a defense to the extent that it precludes a conviction of murder. *Coffey v. Messer*, 945 S.W.2d 944, 945 (Ky. 1997). In *McClellan v. Commonwealth*, 715 S.W.2d 464 (Ky. 1986), the Kentucky Supreme Court defined EED as "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." *Id.* at 468–69.

To establish EED, there must be "definitive and nonspeculative evidence that the onset of the extreme emotional disturbance was caused by a triggering event." *Wheeler v. Commonwealth*, 121 S.W.3d 173, 185 (Ky. 2003) (citing *Morgan v. Commonwealth*, 878 S.W.2d 18 (1994)). While the triggering event may be more gradual than the sudden "flash point" associated with heat of passion, the period between it and the defendant's crime must be uninterrupted. *See Schrimsher v. Commonwealth*, 190 S.W.3d 318, 332 (Ky. 2006) (citing *Baze v. Commonwealth*, 965 S.W.2d 817, 823 (Ky. 1997); *Spears v. Commonwealth*, 30 S.W.3d 152, 155 (Ky. 2000)). The jury could reasonably have found that the petitioner's actions were not triggered by a particular event or series of events. Although Flick was unhappy about being fired from the optometry practice, this occurred sixth months prior to the shootings. Further, Flick had not seen or communicated directly with Wittich or Lambirth since that time.

Assuming, *arguendo*, that there is sufficient evidence of a triggering event, the jury could reasonably have found that the alleged EED was not uninterrupted. After being fired and filing a lawsuit against Lambirth, Flick continued to practice optometry and maintained social relationships with colleagues including Thea Shearer and Danielle Frank. As discussed in the Magistrate Judge's Report and Recommendation, testimony revealed that Flick was relaxed and in good spirits the day of the shooting, having told jokes and eaten ice cream with co-workers. [Record No. 41, p. 11]

There was also circumstantial evidence from which the jury could have found that Flick planned the attack in advance. Flick stole the gun used to shoot Wittich and Lambirth from Danielle Frank in December 2004. [Record No. 40, Day 9, 1/22/08, 10:27] Although he suggests that he intended to use the gun to commit suicide, the jury was not required to believe this. The jury heard testimony that that Flick's behavior was normal in the days and weeks leading up to Wittich's murder. Additionally, Flick wore a black vinyl glove during the shootings, which occurred on what Flick knew to be Lambirth's birthday. [Record No. 40, Day 6, 1/15/08, 16:18; Day 9, 1/22/08, 10:28] The jury reasonably could have interpreted the foregoing as evidence as planning and premeditation—inconsistent with the defense of EED. *See Dalton v. Commissioner*, No. 2008-SC-837, 2010 WL 2025102, *4 (Ky. May 20, 2010) (planning to devise an ambush of victim was antithetical to notion that defendant was under EED). *See also Brown v. Commonwealth*, No. 07-CA-524, 2013 WL 5312530, *3 (Ky. Ct. App. Sept. 20, 2013) (evidence of premeditation is inconsistent with EED defense, "which requires that the perpetrator act uncontrollably").

The petitioner filed objections to the Magistrate Judge's Report and Recommendation. [Record No. 44] Flick argues that he presented overwhelming expert testimony in favor of an

EED defense at trial. Indeed, expert testimony was offered to show that Flick suffered from mental illness and, ultimately, that he had acted under extreme emotional disturbance at the time of the offenses. [Record No. 40, Day 8, 1/17/08; 10:19; Day 9, 1/22/08, 10:54] However, mental illness does not constitute EED. *See Holland v. Commissioner*, 114 S.W.3d 792, 806 (Ky. 2003). Further, it is for a jury to decide whether a triggering event has occurred and whether a defendant acted under the influence of EED. *Spears*, 30 S.W.3d at 155. Based on the evidence discussed above, the jury reasonably discredited the expert testimony and determined that Flick was not acting under EED when he killed Wittich.

Flick also argues that the jury's finding of EED with respect to the assault on Lambirth precludes his conviction of murdering Wittich. As discussed in the Magistrate Judge's Report and Recommendation, each count of an indictment is regarded as a separate indictment and consistency in a verdict is not necessary. *See Commonwealth v. Harrell*, 3 S.W.3d 349, 350–51 (Ky. 1999). Instead, the Court determines whether there is sufficient evidence to sustain each conviction. For the reasons explained, the Kentucky Supreme Court reasonably determined that there was sufficient evidence to sustain Flick's murder conviction.

### IV. Certificate of Appealability

A Certificate of Appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). When the Court's denial of relief is based on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because reasonable jurists would not debate whether the Kentucky Supreme

Court's sufficiency-of-the-evidence decision is objectively unreasonable, a Certificate of Appealability shall not issue.

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. The Magistrate Judge's Report and Recommendation [Record No. 41] is **ADOPTED** and **INCORPORATED** herein by reference.

2. Petitioner Michael Joseph Flick's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2254 [Record No. 1] is **DENIED**. This matter is **DISMISSED**, with prejudice, and **STRICKEN** from the Court's docket.

3. The petitioner's objections to the Magistrate Judge's Report and Recommendation are **OVERRULED**.

4. A Certificate of Appealability shall not issue with respect to any matter or claim raised in this proceeding.

5. A Judgment in favor of the respondent shall issue this date.

This 14th day of June, 2017.



Signed By:
*Danny C. Reeves* DCR
United States District Judge